AUGUSTUS C. ALLEN v. JAMES M. JOHNSTON AND ISAAC
BREBNER.

*Contributory negligence—Assumption of risks of business.*

In this case the plaintiff is held to have been injured through his
own negligence, and the action of the circuit judge in direct-
ing a verdict for the defendants is affirmed.

Error to Alpena. (Kelley, J.) Argued January 30, 1889.
Decided July 11, 1889.

Case. Plaintiff brings error. Affirmed. The facts are
stated in the opinion.

*Shields & McNamara,* for appellant.

*Turnbull & Dafoe,* for defendants.

SHERWOOD, C. J. In this case the plaintiff brings his
action for personal injuries alleged to have been received
through the carelessness and negligence of the defendants.

The court below, at the conclusion of the trial, and at the
request of defendants, directed the verdict for the defend-
ants, and plaintiff brings error.

The case made by the plaintiff was substantially as fol-
lows:

The defendants owned and operated a planing-mill, and
made therein doors and sash and other materials. The build-
ing stood on the line of the street, and was two stories high,
with a door-way in each story opening out upon the street.
The plaintiff had been accustomed to work in the mill, and
knew its location and construction, and at the time of the
accident had rented a portion of the machinery to make cup-
boards, wardrobes, and other articles, and had the use of a

bench and the privilege of doing the work within the building, and for that purpose had the right of ingress and egress to the mill, but was to purchase the lumber to carry on his business of the defendants; but the plaintiff was the owner of the articles he thus manufactured.

It further appears from the record that on the ninth day of February, 1886, the defendants were delivering a quantity of oak scantling three inches square and four and a half feet long, which they had been manufacturing for a Mr. Shell, to use in the manufacture of harrows. They were in the second story of the mill.    Mr. Shell drove his sleigh up to the lower door in the first story, and, placing it a few feet therefrom, the foreman of defendants pitched the scantling out of the door in the upper story, which was directly over the door in the lower story, to the ground, and Mr. Shell then took the pieces, and loaded them in his sleigh.    When he had them partly loaded, the plaintiff, who had come down from the upper story, stood in the lower door-way, and had some talk with Mr. Shell for one or two minutes, and after having invited Mr. Shell, with whom he was acquainted, to come into the building and see some of his work, stepped out of the door; and just at that moment, when unobserved by the foreman, the latter threw down several pieces of the harrow timber for Mr. Shell, and in their descent some of them struck the plaintiff, injuring him considerably; and it is for this injury the plaintiff brings this suit, relying upon the alleged negligence of the defendants in not informing him of the danger which overtook him, or of the use they made of the upper door-way upon the occasion.

After the plaintiff had put in his testimony, the defendants offered no evidence, but asked for the instruction given by the court, as before stated.

In addition to the foregoing statement of facts, it further appeared that the plaintiff once saw the defendants put some frames out of the upper door, about two years before the

accident; that, at the time plaintiff stood in the lower door, Shell's team stood there hitched to the sleigh, and the sleigh was about half loaded, and Mr. Shell stood part way between the door-way and sleigh, and all were in plain sight of plaintiff; that the usual and ordinary course of business at the mill was at the time of the accident well known to the plaintiff; that there were doors in the rear of the planing-mill, through which lumber and articles were taken into, and delivered from, the mill, in the ordinary course of business there; and that the plaintiff was not informed, and had no knowledge, that the agent of the defendants was in the habit of using or that it was his custom to drop timbers or other things from the upper door, but did know that the lower door was the usual place of entering and leaving the mill.

It also appears, in the statements made to the jury by the circuit judge in giving the direction he did, that he said:

"The facts show that he [the plaintiff] had been accustomed to work in the mill, and was acquainted with its operations. * * * He must be assumed, in my judgment, to know, acquainted as he was with the mill and the business carried on there, that it was possible that the employés might be negligent, and he assumed the hazards of such negligence."

The following clause or statement also appears in the record:

"At the request of defendants' counsel, the following was inserted in this bill: The evidence in the case fully warranted the judge in his statement of the facts in his charge and statement to the jury."

This, however, we do not consider.

I am inclined to the view taken by Judge Kelley, after a careful perusal of the record in this case.

Under the arrangement made with the defendants for the use of their machinery and a place in their planing-mill, with a full knowledge of the business defendants carred on in the building, and of the help they necessarily were obliged

76 MICH.—3.

to have in conducting the same, and mode and manner adopted by them in doing such business, the plaintiff took the risk of the perils by which it was surrounded, one of which was the use they made of the door-ways in taking in the lumber and other materials they used in their business, and in delivering to their customers the same when it was manufactured.

It does not appear from the undisputed testimony that the business of the plaintiff, nor yet that of the defendants, required the plaintiff to occupy the place he did at the time he received his injury, and there is nothing in the circumstances of the situation appearing which would indicate that the agent of the defendants might have reasonably expected that the plaintiff or any one else would be likely to be passing out of the lower door at that particular time; neither can I see any impropriety in the agent's passing out of the upper door in the manner he did the harrow material to Mr. Shell; and when it was discovered that he was loading up his sleigh from that side of the mill, as I think it must have been from the testimony appearing in the case, it was the plaintiff's duty to take notice at his peril from what direction the timbers being loaded came. This he did not do; and it nowhere appears that the plaintiff was seen or noticed, either at the door or in his approach to the place where he received the injury of which he makes complaint, by the defendants' employés.

I think the judgment should be affirmed.

The other Justices concurred.